**SIGNED.**

Christopher R. Kaup, State Bar No. 014820
J. Daryl Dorsey, State Bar No. 024237    **Dated: June 11, 2010**

**TB** T I F F A N Y & B O S C O
P.A.

Third Floor, Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Facsimile: (602) 255-0103
E-Mail: crk@tblaw.com; jdd@tblaw.com
*Attorneys for National Bank of Arizona, N.A.*

_____
SARAH S. CURLEY
**U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In re:<br><br>ROCK HARD DESIGNS, INC.,<br><br>     Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:10-bk-00805-SSC<br><br>**SECOND STIPULATED ORDER PROVIDING FOR USE OF CASH COLLATERAL AND ADEQUATE PROTECTION OF SECURED CREDITOR'S LIEN AND STIPULATION LIFTING AUTOMATIC STAY** |

This matter having come before the Court as a result of the agreement set forth below between Debtor, ROCK HARD DESIGNS, INC., ("Debtor"), and NATIONAL BANK OF ARIZONA ("NBA"), the senior secured creditor of Debtor, in settlement of the Motion for Use of Cash Collateral (the "Motion") filed by Debtor and the Objection filed by NBA and the parties having evidenced, by their signatures below, their stipulation and agreement to the terms and conditions of this Second Stipulated Order Authorizing Use of Cash Collateral and Adequate Protection of Secured Creditor's Lien and Stipulation Lifting Automatic Stay (the "Second Stipulation"), and the entry by this Court of this order containing such terms, the Court hereby finds, concludes and orders as follows:

## I.  RECITALS

A.  On January 14, 2010, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. Debtor continues to operate this estate as the debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

B.  Debtor owns certain commercial real property and business operations located at 5326 West Mohave Street, Phoenix, Arizona (the "Real Property"), legally described in **Exhibit "1"**, as its principal business activity. Pursuant to Section 541 of the Bankruptcy Code, the Real Property, personal property (furniture, fixtures and equipment) (the "Personal Property") used therein, and accounts and accounts receivable generated therefrom are property of Debtor's estate. The Real Property and Personal Property are collectively referred to hereinafter as the "Property".

C.  NBA is the secured creditor of the Debtor by virtue of that certain Business Loan Agreement, dated November 21, 2005, for a loan to Debtor identified as Loan 9002, a related Promissory Note (the "9002 Note"), dated November 21, 2005, secured by a Deed of Trust, dated February 14, 2002 as modified by that certain Modification of Deed of Trust, dated November 21, 2005 (the "9002 Deed of Trust"), (collectively the "Loan 9002 Documents") in first position on the Real Property. The 9002 Note is further secured by a Security Agreement, dated February 14, 2002 (the "Security Agreement") which granted a security interest in personal property belonging to Debtor. NBA also made Loan No. 9003 to Debtor, evidenced by that certain Promissory Note, dated February 12, 2007(the "9003 Note"), secured by a Deed of Trust, dated February 12, 2007 (the "9003 Deed of Trust") (collectively the "Loan 9003 Documents") in second position on the Real Property. Finally, NBA extended a further loan to Debtor known as Loan No. 901, evidenced by that certain Business Loan Agreement, dated June 14, 2008, and Promissory Note, dated June 14, 2008 (the "901 Note"), secured by a Security Agreement, dated February 14, 2002, and a Deed of Trust, dated June 14, 2008 (the "901 Deed of Trust") (collectively the "Loan 901 Documents") in third position on the Real Property.

D.     The Loan 9002 Deed of Trust, the Security Agreement, the 9003 Deed of Trust and the 901 Deed of Trust are collectively referred to hereinafter as the "Security Documents." The Loan 9002 Documents, the Security Agreement, the Loan 9003 Documents and Loan 901 Documents are collectively referred to hereinafter as the "Loan Documents".

E.     Debtor agrees that the income from collection of prepetition accounts receivable, rents, the funds in its accounts and all other income and monies in its possession or to which it is entitled or may become entitled is the cash collateral of NBA within the meaning of 11 U.S.C. §363(a) ("Cash Collateral")[1] and, thus, are subject to the restrictions of 11 U.S.C. §363(c).

F.     The Debtor stipulates and agrees that is aware of no defenses to the Security Documents and this Order shall constitute the Debtor's stipulation and agreement that, pursuant to the Loan Documents, NBA holds a valid, enforceable, perfected, and unavoidable security interest in, lien and deed of trust upon the Real Property, the Cash Collateral and all other collateral described in the Loan Documents (the "Collateral"), which security interest, lien and mortgage are senior and prior to all other claims, security interests, liens or mortgages, if any.

G.     Debtor and NBA have entered into this Second Stipulated Order to (i) preserve the value of the estate assets; (ii) avoid protracted and costly cash collateral litigation; (iii) provide a means for accountability of cash collateral receipt and expenditure; (iv) adequately protect NBA from the diminution of its interest in the Cash Collateral; (v) avoid costly litigation over whether the automatic stay should be lifted; and (vi) provide a deadline for the Debtor to file and seek confirmation with a Chapter 11 Plan of Reorganization. Debtor and NBA believe the Second Stipulated Order to be in the best interests of the estate, NBA and all other creditors of the estate.

---

[1] Assuming the Court approves of and enters this Second Stipulated Order, Debtor concedes that income from post-petition accounts receivable is also the cash collateral of NBA and included in the definition of "Cash Collateral" used herein.

-3-

H.   NBA is willing to permit Debtor's limited use of the Cash Collateral pursuant to the "Approved Budget" for the current period (as hereinafter defined), for the sole and limited purpose of operating, preserving and maintaining the Real Property (including the payments to NBA as provided in this Order) and for no other purposes during the term of this Order, provided that Debtor comply with each and every term and condition of this Order.  NBA is consenting to Debtor's use of Cash Collateral in good faith and the parties hereto have negotiated and are agreeing to this Order in good faith, represented by separate counsel of their choice and at arms length as required by Section 363 of the Bankruptcy Code.

I.   Other than the income generated from the Real Property, Debtor's accounts receivables and the operation of Debtor's business, as of the Petition Date, Debtor had no available funds from which to satisfy all ordinary costs and expenses of operating, preserving and maintaining the Real Property.  In order to continue to operate its business, including the Real Property, Debtor has sought NBA's consent to use the Cash Collateral for the payment of ordinary and necessary monthly operating expenses for the Real Property.

J.   Except as otherwise provided by this Order, entry of this Order shall in no way impair or otherwise affect the rights and claims of NBA to the Collateral under the Note and the Deed of Trust or under applicable law, as those rights existed as of the Petition Date.

**II.   OPERATIVE PROVISIONS - USE OF CASH COLLATERAL/ADEQUATE PROTECTION.**

A.   The parties hereby incorporate the foregoing "Recitals" into these "Operative Provisions" as though fully set forth.

B.   Debtor shall have the right and authority to operate and manage its business, including the Real Property, subject to the terms of this Second Stipulated Order.

C.   NBA hereby consents to the use of its Cash Collateral under the following conditions:

-4-

1. Debtor may use the Cash Collateral to pay the reasonable costs and expenses of its business operations, including the Real Property, until June 15, 2010, provided: (i) no expenditure of Cash Collateral during any thirty day period may exceed the respective amount set forth in the Approved Budget attached hereto as **Exhibit "2"** without the express prior written consent of NBA, (ii) Debtor and NBA specifically reserve the right to agree to a modification of the Approved Budget without additional Bankruptcy Court approval if such modification appears to Debtor and NBA to be justified by the costs and benefits associated with administering the Estate. Subject to the provisions of this Order, only the expenses in the amounts set forth in the Approved Budget, or the expenses approved by the Court after notice to NBA and hearing, are deemed to be ordinary, necessary and reasonable.

2. In the event that any unforeseen, additional, or emergency costs or expense shall arise, Debtor may make payment thereof from Cash Collateral only upon the express written consent of NBA or further order of this Court. If funds for such unforeseen, additional or emergency expenses are advanced to Debtor by a principal or insider of Debtor, reimbursement of sums so advanced may be made from the Cash Collateral only with the prior written consent of NBA or an order of this Court;

3. Any Cash Collateral collected by Debtor shall be held by Debtor in an interest bearing separately segregated Debtor-in-Possession account (the "Cash Collateral Account"). The Cash Collateral Account shall contain only the Cash Collateral of NBA and no other estate assets shall be commingled with the Cash Collateral proceeds;

4. As partial adequate protection of NBA's interest in all of the property that is its collateral, commencing with the Cash Collateral collected during the month of May, 2010, Debtor shall make the following payments (collectively the "Adequate Protection Payments") to NBA $17,000.00 on or before May 17, 2010, $18,000.00 on or before June 15, 2010, and $20,000.00 on or before July 15, 2010, plus all Excess Cash (as

that term is defined below) on or before July 15, 2010, and, if this Stipulated Order is extended by written agreement of the parties and approved by the Court, $25,000.00 plus all Excess Cash on or before the 15th day of each month thereafter that this Second Stipulated Order is in effect. In addition, the Debtor shall pay in full the aggregate amount of real estate taxes that were due on March 1, 2010; that is, $21,659.24, to the Maricopa County Treasurer prior to the close of business on May 17, 2010. Excess Cash is defined as all Cash Collateral collected during the preceding month less the amount paid to NBA during that month less the actual expenditures made during such preceding month as set forth in the Approved Budget and authorized by this Order. Such payment of Excess Cash shall constitute a partial adequate protection payment to NBA and Debtor agrees that NBA is entitled to adequate protection arising from Debtor's use of its Cash Collateral provided for herein. Notwithstanding any provisions herein to the contrary, the Debtor shall be permitted to use the Excess Funds to pay the fees payable to the United States Trustee, pursuant to 28 U.S.C. § 1930 and the fees payable to the Clerk of the Court;

5. Unless otherwise ordered by the Court or agreed to by NBA in writing, Debtor shall not use any Cash Collateral: (i) for the payment of any prepetition debts or obligations of Debtor; (ii) for the payment of any debts or obligations of Debtor which are not directly related to the maintenance and operation of the Debtor's business and the Real Property; (iii) payment of any salaries, loans or other amounts to any officers, directors, shareholders or insiders of Debtor, other than Shawn Opatril in an amount not to exceed $5,000.00 per month; (iv) to object to or contest: (a) the amount of the principal balance due and owing to NBA on the 9002 Note, the 9003 Note, the 901 Note or any other amount due or which may become due to NBA; or (b) the validity, perfection, priority or enforceability of the liens granted to NBA under the 9002 Deed of Trust, the 9003 Deed of Trust, the Security Agreement or any other lien or interest granted by

Debtor under any instrument in favor of NBA; or (iv) to investigate, commence or continue any action, claim, or defense against NBA or any of its officers, directors, employees, or agents;

6.     Debtor shall timely file the required interim financial reports and such other accountings as are required by the Local Bankruptcy Rules. Debtor shall provide a copy of said reports to NBA by mail or delivery to counsel for NBA upon filing with the Court;

7.     Debtor shall prepare and deliver (by hand delivery, e-mail or telecopy) to NBA monthly reports of accounts receivable, accounts payable, profit & loss statements and itemizations of all receipts and disbursements in a format to be reasonably designated from time to time by NBA, but which may include:

a.     All billing information from the pre and post-petition period, including the parties billed, and the amounts of those bills;

b.     A list of all accounts receivable containing the name, address and account information of each payor, the dates of all billings and the amount(s) still owing on such accounts;

c.     A list of all funds received and expended by Debtor including receipts, invoices or evidence of payment for all expenses paid in accordance with **Exhibit "2."** NBA reserves the right to require from Debtor additional financial reports that are reasonably related to determining and confirming the Debtor' financial condition during the term of this Second Stipulated Order.

8.     Upon receipt of the accountings described in the preceding paragraphs, NBA shall have the right to inspect the books and records of Debtor from which such accounts were made. Such inspection may be made upon 24 hour request by NBA to Debtor and to Debtor's counsel. Such inspections shall be conducted at Debtor's place of business at a mutually agreed time so as not to unduly interfere with the Debtor's administration of the estate.

9. As partial adequate protection for use of Cash Collateral, Debtor hereby grants to NBA, effective as of the Petition Date, additional and replacement first-priority, continuing liens and security interests, senior in priority to all other claims and security interests, in and to Debtor's assets of any type, including the Real Property whether now owned, owned as of the Petition Date, or thereafter or hereafter acquired, including, without limitation, all of the Debtor's right title and interest in the following property: all real and personal property, cash, rents, revenues, security deposits, real property leases, equipment, investment property, inventory, chattel paper, accounts, accounts receivable, rights to payment, contract rights, instruments, documents, general intangibles, causes of action, claims, fixtures, leasehold improvements, goodwill, licenses, deposit accounts, post-petition bank accounts (including the Cash Collateral Account), and all proceeds and products therefrom and books and records pertaining to the foregoing (the "Replacement Lien"). The Replacement Lien shall be effective as of the Petition Date, and shall continue and be fully valid and perfected without the necessity of the execution, filing and/or recordation of mortgages, Deeds of Trust, patent Deeds of Trust, pledge agreements, financing statements or any other documents, provided, however, that if NBA, in its sole discretion, elects for any reason to file or record any such financing statements, mortgages, deeds of trust, notices or other documents with respect to the Replacement Lien, Debtor will execute the same upon request and the filing or recording thereof will be deemed to have been made as of the Petition Date and will not constitute a violation of the automatic stay. The Replacement Lien will secure repayment of the 9002 Loan, the 9002 Note, the 9003 Loan, the 9003 Note, the Loan 901 and the 901 Note, and all amounts arising therefrom and shall be evidenced and subject to the terms of the Loan Documents and this Order, and such other documents as NBA may reasonably request to address such Replacement Lien. Without limiting the foregoing in any way, such Replacement Lien is granted notwithstanding 11 U.S.C. §552(a), to the extent that any of the Cash Collateral is not already subject to the liens of NBA as proceeds of the Collateral under 11 U.S.C. § 552(b). The automatic stay provided by 11 U.S.C.

§ 362(a) is hereby lifted for the limited purpose to allow Debtor to make the payments provided for herein and grant the security interests and liens contemplated herein and to allow NBA to perfect the security interests and liens granted herein. To the extent such Replacement Lien is insufficient to adequately protect it, NBA is hereby allowed a super-priority administrative expense claim pursuant to Section 507(b) and 503(b)(1)(A) of the Bankruptcy Code, with priority over other costs of administration allowable under section 507(a)(1) of the Bankruptcy Code.

**III.   OPERATIVE PROVISIONS – STAY RELIEF**

A.     The Debtor agrees that the automatic stay is immediately lifted; however, the bank will not take any action to foreclose on its collateral or enforce any of its rights under the Loan Documents unless the Debtor:

1.    fails to make any of the Adequate Protection Payments by the due date and fails to cure that default for a period of five days after the mailing of a notice of default (the "Notice") by NBA;

2.    fails to file a Chapter 11 Plan of Reorganization on or prior to June 15, 2010;

3.    defaults on any other obligation under the terms of the Second Stipulation (i.e. maintaining insurance, paying any taxes when due, etc.);

4.    fails to submit an Approved Budget to NBA or the budget provided by the Debtor demonstrates that it can not make the payments required by the terms of this Second Stipulation; or

5.    uses any portion of the Cash Collateral or makes any payments for purposes other than as set forth in the Approved Budget.

B.     The Stay Relief Motion is granted to the extent necessary to implement the terms of this Second Stipulated Order, subject to the terms and conditions set forth below; however, the effectiveness of that relief is stayed until such time as an Event of Default has occurred that has not been timely cured as set forth above and in Section IV(F) & (G) below.

C.     The Order granting the Stay Relief Motion shall be effective and all stays and injunctions, including the automatic stay imposed by 11 U.S.C. §362(a), shall be automatically

lifted, vacated and annulled without any further order of this Court, effective as of the date of the date which is five (5) days after the date of service of the Notice, in favor of NBA with respect to the Property in order to permit NBA to exercise any and all of its state law and contractual rights and remedies with respect to the Property, including the right to foreclose under the terms of the Loan Documents, against the Real Property through a trustee's sale conducted pursuant to Arizona law;

## IV. OPERATIVE PROVISIONS – GENERAL.

A.      This Second Stipulated Order shall remain in effect until the earlier of: (i) June 15, 2010; (ii) further order of this Court extending or otherwise modifying the terms hereof; (iii) confirmation of a Plan of Reorganization in this case; (iv) a conversion of this case under Chapter 7 of the Bankruptcy Code; (v) appointment of a trustee in this case; or (vi) dismissal of this case.

B.      Debtor shall comply with the Debtor in Possession bank account and reporting requirements of the guidelines promulgated by the Office of the United States Trustee.

C.      Debtor will not file or propose any plan of reorganization (including, but not limited to, any amendment or modification of a plan of reorganization, whether before or after confirmation), which does not incorporate all of the terms of this Second Stipulated Order. In the event of any inconsistency between the Second Stipulated Order and any plan of reorganization filed or proposed by Debtor the terms of the Second Stipulated Order will control; and any such inconsistent provisions of any plan of reorganization or any confirmation order thereon will be null and void.

D.      The Debtor shall file a Disclosure Statement and Plan of Reorganization no later than June 15, 2010.

E.      Within ten (10) days of entry of the Court's order confirming and approving this Second Stipulated Order, the Debtor shall deliver or cause to be delivered to NBA certificates of insurance in accordance with the Loan Documents naming NBA as the named loss payee.

F.    An event of default under this Stipulated Order (an "Event of Default" or "Default") shall include the following:

    1.    The Debtor's failure to perform or comply with any of the terms, conditions, or covenants of this Second Stipulated Order, including:

        (a)    failure to make any payment when due,

        (b)    failure to provide any report required herein within ten (10) days of the date such report should have been provided,

        (c)    failure to meet any other obligation required herein;

        (d)    the use of any Cash Collateral for any purpose other than and the expenditure of any funds in amounts greater than as set forth in this Stipulated Order and the attached budget; and/or

        (d)    failure to pay real property taxes and insurance when due;

        (e)    failure to file Disclosure Statement and Plan of Reorganization by June 15, 2010.

    2.    The foreclosure, liquidation, levy, or similar act by any party (other than NBA) with respect to any property of the Estate serving as collateral of NBA;

    3.    The dismissal of this bankruptcy case;

    4.    The appointment of a trustee under the Bankruptcy Code in the Debtor's bankruptcy case;

    5.    The conversion of this bankruptcy case to a case under another chapter of the Bankruptcy Code;

    6.    The stay, modification, amendment, vacating, or reversal of any term of this Second Stipulated Order, or any of the rights and acknowledgments conferred hereunder, without the express prior written consent of NBA; or

    7.    An objection by the Debtor to amount of the principal balance due to NBA under any of the Loan Documents;

G.     Upon the occurrence of an Event of Default, NBA shall provide written notice to Debtor in the manner set forth herein (the "Notice").  In the event that any such Event of Default remains uncured or has not otherwise been remedied on the date which is five (5) days after the date of service of the Notice of that Event of Default:

1.     NBA's consent regarding Debtor's use of the Cash Collateral pursuant to this Second Stipulated Order shall be terminated without further notice;

2.     Debtor shall not use any Cash Collateral for any purpose without further order of the Court;

3.     Debtor shall hold and segregate all Cash Collateral in trust for NBA, except as otherwise ordered by the Court;

4.     NBA shall be permitted to exercise any and all of its state law and contractual rights and remedies with respect to the Property, including the right to foreclose under the terms of the Loan Documents, against the Real Property through a trustee's sale conducted pursuant to Arizona law;

H.     The reversal or modification on appeal of any provision contained in this Second Stipulated Order shall not affect any rights of NBA or the Debtor which arise prior to such reversal or modification.

I.     All notices, reports or other correspondence to be transmitted to the parties hereto, pursuant to the terms of this Order, shall be in writing and deemed delivered when transmitted by deposit in the United States mail, certified mail, return receipt requested, or by express mail delivery or facsimile transmission, addressed as follows:

Party Documents to be delivered to:

Debtor:     Rock Hard Designs, Inc.
            Attn: Joe Schott
            5326 W. Mohave Dr.
            Phoenix, AZ 85043
            Fax No: 602-353-9264

| | |
|---|---|
| Copies to: | Lyndon B. Steimel, Esq.<br>Law Offices of Lyndon B. Steimel<br>14614 N. Kierland Blvd, Ste N-135<br>Scottsdale, AZ 85254<br>Fax No: 480-367-1188 |
| NBA: | National Bank of Arizona<br>Attn: Maryann Richardson<br>6001 N. 24th Street<br>Phoenix, AZ 85016<br>Fax No: 602-287-0722 |
| Copies to: | Christopher R. Kaup, Esq.<br>Tiffany & Bosco, P.A.<br>Third Floor, Camelback Esplanade II<br>2525 East Camelback Road<br>Phoenix, AZ 85016-4237<br>Fax No: (602) 255-0103 |

or to such other addresses as the parties may specify by written notice delivered in accordance with this paragraph.

J.    Except as expressly set forth herein, this Second Stipulated Order and any order entered in connection with the Second Stipulated Order shall not operate as an adjudication of adequate protection or any other related rights asserted by any party in interest under 11 U.S.C. §§ 361, 362, or 363.  Further, this Order shall not prevent NBA from moving for or obtaining any appropriate relief in this case, including the request of additional adequate protection of its interests.

K.    In the event this case is converted to a case under Chapter 7 of the Bankruptcy Code, the terms of this Order shall be binding upon any superseding Chapter 7 trustee. Furthermore, the terms of this Order shall be binding upon any successors or assigns of Debtor. In the event a trustee or examiner is appointed in Debtor's Chapter 11 case, or if the Chapter 11 case is converted to a Chapter 7 case, Debtor's authority to use the Cash Collateral as provided herein shall terminate automatically.

L.     In taking actions related to or in connection with preparation of this Order, NBA shall have no liability to Debtor or any third party, and shall not be deemed to be in control of the operations of Debtor or to be acting as a responsible person with respect to the operation and management of Debtor.

M.     Except as expressly provided in this Order, the terms and conditions of the above referenced Notes, Deeds of Trust and Security Agreement shall remain in full force and effect, and NBA shall have all of its rights and remedies thereunder, subject to the provisions of the Bankruptcy Code and any orders of this Court. Except as otherwise expressly provided in this Order, the terms and conditions of the Loan Documents are reaffirmed, ratified, and approved by the Debtor.

N.     Except as otherwise provided herein, if any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect the validity of the claims or rights of NBA pursuant to this Order and which are incurred prior to the effective date of such stay, modification or vacation, or the validity or enforceability of any lien, security interest, right or priority authorized pursuant to this Order, and, notwithstanding such stay, modification or vacation, any use of the Cash Collateral made pursuant to this Order prior to the effective date of such modification, stay or vacation, by or for the benefit of Debtor, shall be governed in all respects by the original provisions of this Order, and NBA shall be entitled to all of the rights, privileges and benefits of this Order, including the security interests and priorities granted herein and all rights accorded by Section 507(b) of the Bankruptcy Code, with respect to all such use.

O.     Any failure of NBA, at any time or times hereafter, to require strict performance by the Debtor (or by any Chapter 7 or 11 trustee hereinafter appointed or elected as a representative of Debtor's estate) of any provision of this Order or to the Loan Documents shall not waive, affect or diminish any right of NBA thereafter to demand strict compliance and performance therewith. No delay on the part of NBA in exercising any right or remedy under

-14-

this Order or the Loan Documents shall preclude any other or further exercise of any such right or remedy. None of the rights or remedies of NBA under this Order or the Loan Documents shall be deemed to have been suspended or waived by NBA unless a writing signed by a duly authorized officer of NBA is delivered to the Debtor that specifies such suspension or waiver.

P.    The terms and provisions of this Second Stipulated Order and all stipulations and agreements by the parties affected hereby may not be modified except in writing, executed by the Debtor and NBA, and approved by the Court unless otherwise provided herein.

Q.    The statements contained herein shall not constitute an admission that NBA is adequately protected.

R.    Nothing contained herein shall constitute a waiver or modification of the terms of the Loan Documents

S.    This Second Stipulated Order may be executed in counterparts, all of which together shall constitute one complete agreement and order. Signatures sent by facsimile transmission shall be effective in all respects as originals.

**DATED** this _____ day of _____, 2010.

_____
**HONORABLE SARAH S. CURLEY
U.S. BANKRUPTCY JUDGE**

1

2

3

4

5
Approved and Agreed to this

6
~~/4 xday of April 2010x~~
18th day of May 2010

7
**ROCK ~~HARD DESIGNS~~, INC.**

8
By: _____
JoSEPH P. ScHoTT.

9
Its: President

10
**LAW OFFICES OF LYNDON B. STEIMEL**

11

12
Lyndon B. Steimel, Esq.
*Counsel for Debtor*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-16-

Approved and Agreed to this

__18__ day of ~~April~~ May, 2010:

**ROCK HARD DESIGNS, INC.**

By:_____

Its: President

**LAW OFFICES OF LYNDON B. STEIMEL**

_____

Lyndon B. Steimel, Esq.
Counsel for Debtor

-16-

**TIFFANY & BOSCO, P.A.**

By: /s/ J. Daryl Dorsey
    Christopher R. Kaup
    J. Daryl Dorsey
    Third Floor, Camelback Esplanade II
    2525 East Camelback Road
    Phoenix, AZ 85016-4237
    Telephone: (602) 255-6000
    Facsimile: (602) 255-0103
    E-Mail: crk@tblaw.com; jdd@tblaw.com
    *Attorneys for National Bank of Arizona, N.A.*

EXHIBIT "1"

Lot 4, Riverside Industrial Sites, according to the Plat recorded in Book 217 of Maps, Page 41 and thereafter Amendment Recorded in Docket 1418, Page 122, Records of Maricopa County, Arizona.

EXHIBIT "2"

Rockhard Designs, Inc.
# Weekly Cash Flow Projection
May 26 through July 10, 2010

| | Current Week | 5/30/10 | 6/6/10 | 6/13/10 | 6/20/10 | 6/27/10 | 7/4/10 |
|---|---|---|---|---|---|---|---|
| **Cash:** | | | | | | | |
| Beginning Cash | -13,067 | -896 | 3,902 | -15,011 | -7,676 | -231 | 8,897 |
| Cash Receipts | 40,478 | 25,519 | 22,715 | 23,000 | 25,000 | 27,000 | 30,000 |
| Adjustments | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Cash | 27,411 | 24,623 | 26,617 | 7,989 | 17,324 | 26,769 | 38,897 |
| | | | | | | | |
| **Business Expenses:** | | | | | | | |
| Worker's Compensation | 2,872 | 0 | 0 | 0 | 0 | 2,872 | 0 |
| Insurance | 0 | 4,062 | 0 | 0 | 0 | 0 | 4,062 |
| Payroll | 15,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| Payroll | 0 | 15,000 | 0 | 0 | 0 | 0 | 0 |
| Payroll | 0 | 0 | 15,000 | 0 | 0 | 0 | 0 |
| Payroll | 0 | 0 | 0 | 15,000 | 0 | 0 | 0 |
| Payroll | 0 | 0 | 0 | 0 | 15,000 | 0 | 0 |
| National Bank | 0 | 0 | 18,000 | 0 | 0 | 0 | 0 |
| Payroll | 0 | 0 | 0 | 0 | 0 | 15,000 | 0 |
| Payroll | 0 | 0 | 0 | 0 | 0 | 0 | 15,000 |
| City Of Phoenix-Water | 0 | 0 | 573 | 0 | 0 | 0 | 573 |
| Salt River Project | 0 | 0 | 2,700 | 0 | 0 | 0 | 2,700 |
| Qwest | 0 | 0 | 900 | 0 | 0 | 0 | 900 |
| Verizon | 0 | 0 | 400 | 0 | 0 | 0 | 400 |
| Adjustments | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Business Expenses | 20,372 | 19,062 | 40,073 | 15,000 | 17,500 | 17,872 | 26,135 |
| | | | | | | | |
| Cash Available for Disbursement | 7,039 | 5,561 | -13,456 | -7,011 | -176 | 8,897 | 12,762 |
| | | | | | | | |
| **Accounts Payable:** | | | | | | | |
| Sovereign Bank New England | 6,224 | 0 | 0 | 0 | 0 | 0 | 0 |
| Goodale True Value | 0 | 0 | 0 | 98 | 0 | 0 | 0 |
| United Parcel Service | 0 | 0 | 0 | 547 | 0 | 0 | 0 |
| Cactus Mat, Inc. | 0 | 0 | 55 | 0 | 55 | 0 | 0 |
| Allied Waste Services | 0 | 290 | 0 | 0 | 0 | 0 | 0 |
| Wist Office Products | 553 | 0 | 0 | 0 | 0 | 0 | 0 |
| Dex West | 287 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sprung Technoligies | 0 | 446 | 100 | 0 | 0 | 0 | 0 |
| Ingersol-Rand Air Company | 871 | 0 | 0 | 0 | 0 | 0 | 0 |
| Arizona Customs Brokers | 0 | 145 | 0 | 0 | 0 | 0 | 0 |
| Smalley & Company | 0 | 193 | 0 | 0 | 0 | 0 | 0 |
| On Glass Experts | 0 | 492 | 0 | 0 | 0 | 0 | 0 |
| Bron Tapes of Arizona | 0 | 93 | 0 | 0 | 0 | 0 | 0 |
| Bearing-Belt & Chain, Inc. | 0 | 0 | 0 | 20 | 0 | 0 | 0 |
| Adjustments | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Accounts Payable | 7,935 | 1,659 | 1,555 | 665 | 55 | 0 | 0 |
| | | | | | | | |
| Ending Cash Balance | -896 | 3,902 | -15,011 | -7,676 | -231 | 8,897 | 12,762 |